(Slip Opinion)          OCTOBER TERM, 2009          1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MAGWOOD *v.* PATTERSON, WARDEN, ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 09–158.   Argued March 24, 2010—Decided June 24, 2010

Petitioner Magwood was sentenced to death for murder. After the Alabama courts denied relief on direct appeal and in postconviction proceedings, he sought federal habeas relief. The District Court conditionally granted the writ as to his sentence, mandating that he be released or resentenced. The state trial court sentenced him to death a second time. He filed another federal habeas application, challenging this new sentence on the grounds that he did not have fair warning at the time of his offense that his conduct would permit a death sentence under Alabama law, and that his attorney rendered ineffective assistance during the resentencing proceeding. The District Court once again conditionally granted the writ. The Eleventh Circuit reversed, holding in relevant part that Magwood's challenge to his new death sentence was an unreviewable "second or successive" challenge under 28 U. S. C. §2244(b) because he could have raised his fair-warning claim in his earlier habeas application.

*Held:* The judgment is reversed and the case is remanded.

555 F. 3d 968, reversed and remanded.

JUSTICE THOMAS delivered the opinion of the Court, except as to Part IV–B, concluding that because Magwood's habeas application challenges a new judgment for the first time, it is not "second or successive" under §2244(b). Pp. 8–15, 17–22.

   (a) This case turns on when a claim should be deemed to arise in a "second or successive habeas corpus application." §§2244(b)(1), (2). The State contends that §2244(b), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), should be read to bar claims that a prisoner had a prior opportunity to present. Under this "one opportunity" rule, Magwood's fair-warning claim was "sec-

ond and successive" because he had an opportunity to raise it in his first application but did not. Magwood counters that §2244(b) should not apply to a first application challenging a new judgment intervening between habeas applications. This Court agrees. The phrase "second or successive" is not defined by AEDPA and it is a "term of art." *Slack* v. *McDaniel*, 529 U. S. 473, 486. To determine its meaning, the Court looks first to the statutory context. Section 2244(b)'s limitations apply only to a "habeas corpus application under §2254," *i.e.,* an application on "behalf of a person in custody pursuant to the judgment of a State court," §2254(b)(1). Both §2254(b)'s text and the relief it provides indicate that "second or successive" must be interpreted with respect to the judgment challenged. A §2254 petitioner "seeks invalidation . . . of the judgment authorizing [his] confinement," *Wilkinson* v. *Dotson*, 544 U. S. 74, 83. If a conditional writ is granted, "the State may seek a *new* judgment (through a new trial or a new sentencing proceeding)." *Ibid.* The State errs in contending that, if §2254 is relevant at all, "custody" and not "judgment," is the proper reference because unlawful "custody" is the "substance" requirement for habeas relief. This argument is unpersuasive. Section 2254 articulates the kind of custody that may be challenged under §2254. Because §2254 applies only to custody pursuant to a state-court judgment, that "judgment" is inextricable and essential to relief. It is a requirement that distinguishes §2254 from other statutes permitting constitutional relief. See, *e.g.,* §§2255, 2241. The State's "custody"-based rule is also difficult to justify because applying "second or successive" to any subsequent application filed before a prisoner's release would require a prisoner who remains in continuous custody for an unrelated conviction to satisfy §2244(b)'s strict rules to challenge the unrelated conviction *for the first time.* Nothing in the statutory text or context supports such an anomalous result. Pp. 8–13.

(b) This Court is also not convinced by the State's argument that a "one opportunity" rule would be consistent with the statute and should be adopted because it better reflects AEDPA's purpose of preventing piecemeal litigation and gamesmanship. AEDPA uses "second or successive" to modify "application," not "claim" as the State contends, and this Court has refused to adopt an interpretation of §2244(b) that would "elid[e] the difference between an 'application' and a 'claim,'" *Artuz* v. *Bennett*, 531 U. S. 4, 9. The State's reading also reflects a more fundamental error. It would undermine or render superfluous much of §2244(b)(2). In some circumstances, it would increase the restrictions on review by applying pre-AEDPA abuse-of-the-writ rules where §2244(b)(2) imposes no restrictions. In others, it would decrease the restrictions on review by applying more lenient

pre-AEDPA abuse-of-the-writ rules where §2244(b) mandates stricter requirements. Pp. 13–15.

    (c) This Court's interpretation of §2244(b) is consistent with its precedents. Because none of the pre-AEDPA cases that the State invokes, *e.g., Wong Doo* v. *United States*, 265 U. S. 239, applies "second or successive" to an application challenging a new judgment, these cases shed no light on the question presented here. Nor do post-AEDPA cases contradict the approach adopted here. Only *Burton* v. *Stewart*, 549 U. S. 147, comes close to addressing the threshold question whether an application is "second or successive" if it challenges a new judgment, and that decision confirms that the existence of a new judgment is dispositive. In holding that both of the petitioner's habeas petitions had challenged the same judgment, this Court in *Burton* expressly recognized that had there been a new judgment intervening between the habeas petitions, the result might have been different. Here, there is such an intervening judgment. This is Magwood's first application challenging that intervening judgment. Magwood challenges not the trial court's error in his first sentencing, but the court's new error when it conducted a full resentencing and reviewed the aggravating evidence afresh. Pp. 15, 17–21.

    (d) Because Magwood has not attempted to challenge his underlying conviction, the Court has no occasion to address the State's objection that this reading of §2244(b) allows a petitioner who obtains a conditional writ as to his sentence to file a subsequent application challenging not only his resulting, new sentence, but also his original, undisturbed conviction. Nor does the Court address whether Magwood's fair-warning claim is procedurally defaulted or whether the Eleventh Circuit erred in rejecting his ineffective-assistance-of-counsel claim. Pp. 21–22.

    THOMAS, J., delivered the opinion of the Court, except as to Part IV–B. SCALIA, J., joined in full, and STEVENS, BREYER, and SOTOMAYOR, JJ., joined, except as to Part IV–B. BREYER, J., filed an opinion concurring in part and concurring in the judgment, in which STEVENS and SOTOMAYOR, JJ., joined. KENNEDY, J., filed a dissenting opinion, in which ROBERTS, C. J., and GINSBURG and ALITO, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 09–158

BILLY JOE MAGWOOD, PETITIONER *v.* TONY PATTERSON, WARDEN, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[June 24, 2010]

JUSTICE THOMAS delivered the opinion of the Court, except as to Part IV–B.

Petitioner Billy Joe Magwood was sentenced to death for murdering a sheriff. After the Alabama courts denied relief on direct appeal and in postconviction proceedings, Magwood filed an application for a writ of habeas corpus in Federal District Court, challenging both his conviction and his sentence. The District Court conditionally granted the writ as to the sentence, mandating that Magwood either be released or resentenced. The state trial court conducted a new sentencing hearing and again sentenced Magwood to death. Magwood filed an application for a writ of habeas corpus in federal court challenging this new sentence. The District Court once again conditionally granted the writ, finding constitutional defects in the new sentence. The Court of Appeals for the Eleventh Circuit reversed, holding in relevant part that Magwood's challenge to his new death sentence was an unreviewable "second or successive" challenge under 28 U. S. C. §2244(b) because he could have mounted the same challenge to his original death sentence. We granted certio-

rari, and now reverse. Because Magwood's habeas application[1] challenges a new judgment for the first time, it is not "second or successive" under §2244(b).

I

After a conviction for a drug offense, Magwood served several years in the Coffee County Jail in Elba, Alabama, under the watch of Sheriff C. F. "Neil" Grantham. During his incarceration, Magwood, who had a long history of mental illness, became convinced that Grantham had imprisoned him without cause, and vowed to get even upon his release. Magwood followed through on his threat. On the morning of March 1, 1979, shortly after his release, he parked outside the jail and awaited the sheriff's arrival. When Grantham exited his car, Magwood shot him and fled the scene.

Magwood was indicted by a grand jury for the murder of an on-duty sheriff, a capital offense under Alabama Code §13–11–2(a)(5) (1975).[2] He was tried in 1981. The prosecution asked the jury to find Magwood guilty of aggravated murder as charged in the indictment, and sought the death penalty. Magwood pleaded not guilty by reason of insanity; however, the jury found him guilty of capital murder under §13–11–2(a)(5), and imposed the sentence of death based on the aggravation charged in the indictment.

_____

[1] Although 28 U. S. C. §2244(b) refers to a habeas "application," we use the word "petition" interchangeably with the word "application," as we have in our prior cases.

[2] At the time of the murder, Alabama Code §13–11–2(a) provided: "If the jury finds the defendant guilty, it shall fix the punishment at death when the defendant is charged by indictment with any of the following offenses and with aggravation, which must also be averred in the indictment . . . ." The offenses included "murder of any . . . sheriff . . . while . . . on duty or because of some official or job-related act." §13–11–2(a)(5). The same statute set forth a list of "aggravating circumstances," §13–11–6, but the trial court found that none existed in Magwood's case.

In accordance with Alabama law, the trial court reviewed the basis for the jury's decision. See §§13–11–3, 13–11–4. Although the court did not find the existence of any statutory "aggravating circumstance" under §13–11–6, the court relied on *Ex parte Kyzer*, 399 So. 2d 330 (Ala. 1981), to find that murder of a sheriff while "on duty or because of some official or job-related acts," §13–11–2(a)(5), is a capital felony that, by definition, involves aggravation sufficient for a death sentence.[3] The trial court found that Magwood's young age (27 at the time of the offense) and lack of significant criminal history qualified as mitigating factors, but found no mitigation related to Magwood's mental state. Weighing the aggravation against the two mitigating factors, the court approved the sentence of death. The Alabama courts affirmed. See *Magwood* v. *State*, 426 So. 2d 918, 929 (Ala. Crim. App. 1982); *Ex parte Magwood,* 426 So. 2d 929, 932 (Ala. 1983). We denied certiorari. *Magwood* v. *Alabama*, 462 U. S. 1124 (1983). After the Alabama Supreme Court set an execution date of

———————

[3] As relevant here, *Kyzer* did away with the prior Alabama rule that an aggravating component of a capital felony could not double as an aggravating factor supporting a capital sentence. In *Kyzer*, the defendant had been sentenced to death for the intentional murder of "two or more human beings" under §13–11–2(a)(10). See 399 So. 2d, at 332. The crime of murder, so defined, was aggravated by its serial nature, just as Magwood's crime of murder, as defined under §13–11–2(a)(5), was aggravated by the fact that he killed an on-duty sheriff because of the sheriff's job-related acts. In *Kyzer,* the Alabama Supreme Court ultimately remanded for a new trial, but in order to guide the lower court on remand, addressed whether the aggravation in the charged crime, see §13–11–2(a)(10), was sufficient to impose a sentence of death even without a finding of any "aggravating circumstance" enumerated in §13–11–6. See *id.*, at 337. The court ruled that if the defendant was convicted under §13–11–2(a)(10), "the jury and the trial judge at the sentencing hearing [may] find the aggravation averred in the indictment as the aggravating circumstance, even though the aggravation is not listed in §13–11–6 as an aggravating circumstance." *Id.*, at 339 (internal quotation marks omitted).

July 22, 1983, Magwood filed a *coram nobis* petition and an application for a stay of execution. The trial court held a hearing on the petition and denied relief on July 18, 1983.[4]

Eight days before his scheduled execution, Magwood filed an application for a writ of habeas corpus under 28 U. S. C. §2254, and the District Court granted a stay of execution. After briefing by the parties, the District Court upheld Magwood's conviction but vacated his sentence and conditionally granted the writ based on the trial court's failure to find statutory mitigating circumstances relating to Magwood's mental state.[5] See *Magwood* v. *Smith*, 608 F. Supp. 218, 225–226, 229 (MD Ala. 1985). The Court of Appeals affirmed. See *Magwood* v. *Smith*, 791 F. 2d 1438, 1450 (CA11 1986).

In response to the conditional writ, the state trial court held a new sentencing proceeding in September 1986. This time, the judge found that Magwood's mental state, as well as his age and lack of criminal history, qualified as statutory mitigating circumstances. As before, the court found that Magwood's capital felony under §13–11–2(a)(5) included sufficient aggravation to render him death eligible. In his proposed findings, Magwood's attorney agreed that Magwood's offense rendered him death eligible, but argued that a death sentence would be inappropriate in light of the mitigating factors. The trial court imposed a

—————

[4] The Alabama Court of Criminal Appeals subsequently affirmed the denial of Magwood's *coram nobis* petition, see *Magwood* v. *State,* 449 So. 2d 1267 (1984), and the Alabama Supreme Court denied Magwood's motion to file an out-of-time appeal from that decision, see *Ex parte Magwood*, 453 So. 2d 1349 (1984).

[5] See Ala. Code §13–11–7 ("Mitigating circumstances shall be the following: . . . (2) The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance . . . . (6) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired").

Cite as: 561 U. S. ____ (2010)

Opinion of the Court

penalty of death, stating on the record that the new
"judgment and sentence [were] the result of a complete
and new assessment of all of the evidence, arguments of
counsel, and law." Sentencing Tr., R. Tab 1, p. R–25. The
Alabama courts affirmed, see *Magwood* v. *State,* 548
So. 2d 512, 516 (Ala. Crim. App. 1988); *Ex parte Magwood*,
548 So. 2d 516, 516 (Ala. 1988), and this Court denied
certiorari, see *Magwood* v. *Alabama*, 493 U. S. 923 (1989).

Magwood filed a petition for relief under Alabama's
former Temporary Rule of Criminal Procedure 20 (1987)
(now Ala. Rule Crim. Proc. 32) (Rule 20 petition) claiming,
*inter alia*, that his death sentence exceeded the maximum
sentence authorized by statute; that his death sentence
violated the Fifth, Eighth, and Fourteenth Amendments
because it rested upon an unforeseeable interpretation of
the capital sentencing statute; and that his attorney ren-
dered ineffective assistance of counsel during resentenc-
ing. The trial court denied relief. It held that the statu-
tory basis for Magwood's death sentence had been
affirmed on direct appeal and could not be relitigated. The
trial court also held that Magwood's attorney played no
substantive role in the resentencing and had no obligation
to dispute the aggravation, given that the District Court
had required only that the trial court consider additional
mitigating factors.

Magwood appealed the denial of his Rule 20 petition,
arguing, *inter alia*, that his sentence was unconstitutional
because he did not have fair warning that his offense could
be punished by death, and that he received constitution-
ally ineffective assistance of counsel at resentencing. See
Record in Appeal No. 92–843 (Ala. Crim. App.), Tab 25,
pp. 23–24, 53–61.

The Alabama Court of Criminal Appeals affirmed, citing
its decision on direct appeal as to the propriety of the
death sentence. See *Magwood* v. *State*, 689 So. 2d 959,
965 (1996) (citing *Kyzer,* 399 So. 2d 330*,* and *Jackson* v.

*State*, 501 So. 2d 542 (Ala. Crim. App. 1986)).[6]  The Alabama Supreme Court denied certiorari, see 689 So. 2d, at 959, as did this Court, see *Magwood* v. *Alabama*, 522 U. S. 836 (1997).

In April 1997, Magwood sought leave to file a second or successive application for a writ of habeas corpus challenging his 1981 judgment of conviction.  See §2244(b)(3)(A) (requiring authorization from the Court of Appeals to file a second or successive application).  The Court of Appeals denied his request.  See *In re Magwood,* 113 F. 3d 1544 (CA11 1997).  He simultaneously filed a petition for a writ of habeas corpus challenging his new death sentence, which the District Court conditionally granted.  See *Magwood* v. *Culliver,* 481 F. Supp. 2d 1262, 1295 (MD Ala. 2007).  In that petition, Magwood again argued that his sentence was unconstitutional because he did not have fair warning at the time of his offense that his conduct would be sufficient to warrant a death sentence under Alabama law, and that his attorney rendered ineffective assistance during the resentencing proceeding.

Before addressing the merits of Magwood's fair-warning claim, the District Court *sua sponte* considered whether the application was barred as a "successive petition" under §2244, and concluded that it was not.  *Id.*, at 1283–1284 ("[H]abeas petitions challenging the constitutionality of a resentencing proceeding are not successive to petitions that challenge the underlying conviction and original sentence" (citing 2 R. Hertz & J. Liebman, Federal Habeas Corpus Practice & Procedure §28.3b(i), p. 1412 (5th ed. 2005) ("When a petitioner files a second or subsequent petition to challenge a criminal judgment *other than* the

---

[6] In *Jackson* v. *State*, the Alabama Court of Criminal Appeals held that *Kyzer* supported a death sentence for a defendant who was convicted for an offense committed before *Kyzer* was decided but was resentenced after that decision.  501 So. 2d 542, 544 (1986).

one attacked in an earlier petition, it cannot be said that the two petitions are 'successive'" (emphasis in original))).

The District Court rejected the State's argument that Magwood had procedurally defaulted the fair-warning claim by failing to present it adequately to the state courts, noting that Magwood had presented the claim both in his Rule 20 petition and on appeal from the denial of that petition. See 481 F. Supp. 2d, at 1285–1286; *supra,* at 5. Addressing the merits, the District Court ruled that Magwood's death sentence was unconstitutional because "at the time of the offense conduct, Magwood did not have fair notice that he could be sentenced to death absent at least one aggravating circumstance enumerated in former 1975 Ala. Code §13–11–6." 481 F. Supp. 2d, at 1285. The District Court also found the state court's grounds for rejecting Magwood's ineffective-assistance claim unreasonable in light of clearly established federal law, noting that Magwood's attorney in fact had engaged substantively in the "complete and new" resentencing, and although the attorney could not be expected to object on state-law grounds foreclosed by precedent, he was clearly ineffective for failing to raise the federal fair-warning claim. *Id.,* at 1294 (internal quotation marks omitted).

The Court of Appeals reversed in relevant part. See 555 F. 3d 968 (CA11 2009). It concluded that the first step in determining whether §2244(b) applies is to "separate the new claims challenging the resentencing from the old claims that were or should have been presented in the prior application." *Id.*, at 975 (internal quotation marks omitted). Under the Court of Appeals' approach, any claim that "challenge[s] the new, amended component of the sentence" should be "regarded as part of a first petition," and any claim that "challenge[s] any component of the original sentence that was not amended" should be "regarded as part of a second petition." *Ibid.* Applying this test, the court held that because Magwood's fair-

warning claim challenged the trial court's reliance on the same (allegedly improper) aggravating factor that the trial court had relied upon for Magwood's original sentence, his claim was governed by §2244(b)'s restrictions on "second or successive" habeas applications. *Id.*, at 975–976. The Court of Appeals then dismissed the claim because Magwood did not argue that it was reviewable under one of the exceptions to §2244(b)'s general rule requiring dismissal of claims first presented in a successive application.[7] See *id.*, at 976.

We granted certiorari to determine whether Magwood's application challenging his 1986 death sentence, imposed as part of resentencing in response to a conditional writ from the District Court, is subject to the constraints that §2244(b) imposes on the review of "second or successive" habeas applications. 558 U. S. ___ (2009).

## II

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U. S. C. §2244(b) provides in relevant part:

> "(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
> "(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

---

[7] The court treated Magwood's ineffective-assistance claim as new and free of the restrictions of §2244(b)(2), but reversed on the merits: "While there was a possible objection, Alabama's highest court had said in *Kyzer* that a §13–11–2 aggravating factor could be used as an aggravating circumstance. We are not prepared to require counsel to raise an argument that has already been decided adversely to his client's position by a state's highest court in order to avoid being found ineffective." 555 F. 3d, at 977–978.

"(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

"(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

"(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."

This case turns on the meaning of the phrase "second or successive" in §2244(b). More specifically, it turns on when a claim should be deemed to arise in a "second or successive habeas corpus application." §§2244(b)(1), (2). If an application is "second or successive," the petitioner must obtain leave from the Court of Appeals before filing it with the district court. See §2244(b)(3)(A). The district court must dismiss any claim presented in an authorized second or successive application unless the applicant shows that the claim satisfies certain statutory requirements. See §2244(b)(4). Thus, if Magwood's application was "second or successive," the District Court should have dismissed it in its entirety because he failed to obtain the requisite authorization from the Court of Appeals. If, however, Magwood's application was not second or successive, it was not subject to §2244(b) at all, and his fair-warning claim was reviewable (absent procedural default).

The State contends that although §2244(b), as amended by AEDPA, applies the phrase "second or successive" to "application[s]," it "is a claim-focused statute," Brief for Respondents 22–24, and "[c]laims, not applications, are barred by §2244(b)," *id.*, at 24 (citing *Artuz* v. *Bennett*, 531

U. S. 4, 9 (2000)). According to the State, the phrase should be read to reflect a principle that "a prisoner is entitled to one, but only one, full and fair opportunity to wage a collateral attack." See Brief for Respondents 25–26 (citing *Beyer* v. *Litscher,* 306 F. 3d 504, 508 (CA7 2002); internal quotation marks omitted). The State asserts that under this "one opportunity" rule, Magwood's fair-warning claim was successive because he had an opportunity to raise it in his first application, but did not do so. See Brief for Respondents 25–26.

Magwood, in contrast, reads §2244(b) to apply only to a "second or successive" application challenging the same state-court *judgment*. According to Magwood, his 1986 resentencing led to a new judgment, and his first application challenging that new judgment cannot be "second or successive" such that §2244(b) would apply. We agree.

We begin with the text. Although Congress did not define the phrase "second or successive," as used to modify "habeas corpus application under section 2254," §§2244(b)(1)–(2), it is well settled that the phrase does not simply "refe[r] to all §2254 applications filed second or successively in time," *Panetti* v. *Quarterman*, 551 U. S. 930, 944 (2007); see *id.*, at 947 (creating an "exceptio[n]" to §2244(b) for a second application raising a claim that would have been unripe had the petitioner presented it in his first application); *Stewart* v. *Martinez-Villareal*, 523 U. S. 637, 643 (1998) (treating a second application as part of a first application where it was premised on a newly ripened claim that had been dismissed from the first application "as premature"); *Slack* v. *McDaniel*, 529 U. S. 473, 478, 487 (2000) (declining to apply §2244(b) to a second application where the District Court dismissed the first application for lack of exhaustion).[8]

---

[8] In *Slack* v. *McDaniel,* we applied pre-AEDPA law, but "d[id] not suggest the definition of second or successive would be different under

We have described the phrase "second or successive" as a "term of art." *Id.,* at 486. To determine its meaning, we look first to the statutory context. The limitations imposed by §2244(b) apply only to a "habeas corpus application under §2254," that is, an "application for a writ of habeas corpus on behalf of a person in custody pursuant to *the judgment* of a State court," §2254(b)(1) (emphasis added). The reference to a state-court judgment in §2254(b) is significant because the term "application" cannot be defined in a vacuum. A §2254 petitioner is applying for something: His petition "seeks *invalidation* (in whole or in part) *of the judgment* authorizing the prisoner's confinement," *Wilkinson* v. *Dotson*, 544 U. S. 74, 83 (2005) (emphasis added). If his petition results in a district court's granting of the writ, "the State may seek a *new* judgment (through a new trial or a new sentencing proceeding)." *Ibid.* (emphasis in original). Thus, both §2254(b)'s text and the relief it provides indicate that the phrase "second or successive" must be interpreted with respect to the judgment challenged.

The State disagrees, contending that if the cross-reference to §2254 is relevant, we should focus not on the statute's reference to a "judgment" but on its reference to "custody," Brief for Respondents 53; compare §§2254(a), (b) (establishing rules for review of "an application for a writ of habeas corpus" on "behalf of a person in custody pursuant to the *judgment* of a State court" (emphasis added)) with §2254(a) (specifying that an application may be entertained "only on the ground that [the petitioner] is *in custody* in violation of the Constitution or laws or treaties of the United States" (emphasis added)). The State explains that unlawful "custody" is the key "'substance

––––––––

AEDPA." 529 U. S., at 473, 486. Courts have followed *Slack* in post-AEDPA cases, and the State agrees it is relevant to the question presented here. See Brief for Respondents 36, n. 13.

requirement'" of §2254, whereas being held pursuant to a state-court "judgment" is merely a " 'status requirement.' " Brief for Respondents 53 (quoting Liebman & Hertz, Federal Habeas Corpus Practice and Procedure §8.1, p. 391).

We find this argument unpersuasive. Section 2254 articulates the kind of confinement that may be challenged on the ground that the petitioner is being held "in violation of the Constitution or laws or treaties of the United States." §2254(a). The requirement of custody *pursuant to a state-court judgment* distinguishes §2254 from other statutory provisions authorizing relief from constitutional violations—such as §2255, which allows challenges to the judgments of federal courts, or 42 U. S. C. §1983, which allows federal-court suits against state and local officials. Custody is crucial for §2254 purposes, but it is inextricable from the judgment that authorizes it.

The State's "custody"-based rule is difficult to justify for another reason. Under the State's approach, applying the phrase "second or successive" to any subsequent application filed before a prisoner's release would mean that a prisoner who remains in continuous custody for a completely unrelated conviction would have to satisfy the strict rules for review under §2244(b) to challenge his unrelated conviction *for the first time.* Nothing in the statutory text or context supports, much less requires, such an anomalous result. See, *e.g.*, *Beyer,* 306 F. 3d*,* at 507 ("[A] prisoner is entitled to one free-standing collateral attack per judgment, rather than one attack per stretch of imprisonment"); cf. *Dotson, supra*, at 85 (SCALIA, J., concurring) ("[W]hen a habeas petitioner challenges only one of several consecutive sentences, the court may invalidate the challenged sentence even though the prisoner remains

in custody to serve the others").[9]

## III

Appearing to recognize that Magwood has the stronger textual argument, the State argues that we should rule based on the statutory purpose. According to the State, a "one opportunity" rule is consistent with the statutory text, and better reflects AEDPA's purpose of preventing piecemeal litigation and gamesmanship.

We are not persuaded. AEDPA uses the phrase "second or successive" to modify "application." See §§2244(b)(1), (2). The State reads the phrase to modify "claims." See, *e.g.*, Brief for Respondents 51 ("Congress' intent for AEDPA was to eradicate successive claims"). We cannot replace the actual text with speculation as to Congress' intent. We have previously found Congress' use of the word "application" significant, and have refused to adopt an interpretation of §2244(b) that would "elid[e] the difference between an 'application' and a 'claim,'" *Artuz*, 531 U. S., at 9; see also *Gonzalez* v. *Crosby*, 545 U. S. 524, 530 (2005) ("[F]or purposes of §2244(b), an 'application' for habeas relief is a filing that contains one or more 'claims'"). Therefore, although we agree with the State that many of the rules under §2244(b) focus on claims, that does not entitle us to rewrite the statute to make the phrase "second or successive" modify claims as well.[10]

The State's reading leads to a second, more fundamental

---

[9] Our focus on the judgment accords with current filing requirements. See Habeas Corpus Rule 2(b) (requiring any petitioner to "ask for relief from the state-court judgment being contested"); Rule 2(e) (prescribing that any "petitioner who seeks relief from judgments of more than one state court must file a separate petition covering the judgment or judgments of each court").

[10] The dissent recognizes that the phrase "second or successive" applies to an *application* as a whole, see *post,* at 2–4 (opinion of KENNEDY, J.), but departs in other significant ways from the statutory text, see *infra,* at 14–15.

error.   Under the State's "one opportunity" rule, the
phrase "second or successive" would apply to any claim
that the petitioner had a full and fair opportunity to raise
in a prior application.   And the phrase "second or succes-
sive" would *not* apply to a claim that the petitioner did *not*
have a full and fair opportunity to raise previously.

This reading of §2244(b) would considerably under-
mine—if not render superfluous—the exceptions to dis-
missal set forth in §2244(b)(2).   That section describes
circumstances when a claim not presented earlier may be
considered: intervening and retroactive case law, or newly
discovered facts suggesting "that . . . no reasonable fact-
finder would have found the applicant guilty of the under-
lying offense."  §2244(b)(2)(B)(ii).   In either circumstance,
a petitioner cannot be said to have had a prior opportunity
to raise the claim, so under the State's rule the claim
would not be successive and §2244(b)(2) would not apply to
it at all.   This would be true even if the claim were raised
in a second application challenging the same judgment.[11]

In addition to duplicating the exceptions under §2244(b)
in some circumstances, the State's rule would dilute them
in others.   Whereas the exception to dismissal of fact-
based claims not presented in a prior application applies
only if the facts provide clear and convincing evidence

---

[11] This case does not require us to determine whether §2244(b) ap-
plies to every application filed by a prisoner in custody pursuant to a
state-court judgment if the prisoner challenged the *same* state-court
judgment once before.   Three times we have held otherwise.   See *Slack*
v. *McDaniel,* 529 U. S. 475, 487 (2000); *Stewart* v. *Martinez-Villareal,*
523 U. S. 637, 643 (1998); *Panetti* v. *Quarterman,* 551 U. S. 930, 945
(2007).

The dissent's claim that our reading of §2244(b) calls one of those
decisions, *Panetti,* into doubt, see *post,* at 7–8, is unfounded.   The
question in this case is whether a first application challenging a new
sentence in an intervening judgment is second or successive.   It is not
whether an application challenging the same state-court judgment
must always be second or successive.

"that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense," §2244(b)(2)(B)(ii), under the State's rule, all that matters is that the facts "could not have been discovered previously through the exercise of due diligence," §2244(b)(2)(B)(i). We decline to adopt a reading that would thus truncate §2244(b)(2)'s requirements.

## IV
## A

We are not persuaded by the State or the dissent that the approach we take here contradicts our precedents. The State invokes several pre-AEDPA cases denying review of claims in second or successive applications where the petitioners did not avail themselves of prior opportunities to present the claims. See *Wong Doo* v. *United States*, 265 U. S. 239 (1924); *Antone* v. *Dugger*, 465 U. S. 200 (1984) *(per curiam); Woodard* v. *Hutchins*, 464 U. S. 377 (1984) *(per curiam); Delo* v. *Stokes*, 495 U. S. 320 (1990) *(per curiam); McCleskey* v. *Zant*, 499 U. S. 467 (1991). These cases, the State contends, show that Magwood's fair-warning claim should be dismissed as second or successive because he could have raised—but did not raise—the claim in his first application.

But none of these pre-AEDPA decisions applies the phrase "second or successive" to an application challenging a new judgment. Therefore, the decisions cast no light on the question before the Court today: whether abuse-of-the-writ rules, as modified by AEDPA under §2244(b)(2), apply at all to an application challenging a new judgment. The State's misplaced reliance on those cases stems from its failure to distinguish between §2244(b)'s threshold inquiry into whether an application is "second or successive," and its subsequent inquiry into whether claims in a successive application must be dismissed.

B

The dissent similarly errs by interpreting the phrase "second or successive" by reference to our longstanding doctrine governing abuse of the writ. AEDPA modifies those abuse-of-the-writ principles and creates new statutory rules under §2244(b). These rules apply only to "second or successive" applications. The dissent contends that this reading renders AEDPA inapplicable to a broad range of abusive claims that would have been barred under prior rules. Yet, the dissent fails to cite any case in which this Court has dismissed a claim as successive or abusive if the petitioner raised it in an application challenging a new judgment.

The dissent's conclusion that our reading of §2254 "unmoor[s] the phrase 'second or successive' from its textual and historical underpinnings," *post,* at 8, is unwarranted. Pre-AEDPA usage of the phrase "second or successive" is consistent with our reading. A review of our habeas precedents shows that pre-AEDPA cases cannot affirmatively define the phrase "second or successive" as it appears in AEDPA. Congress did not even apply the phrase "second or successive" to applications filed by state prisoners until it enacted AEDPA. The phrase originally arose in the federal context, see §2255 (1946 ed., Supp. II), and applied only to applications raising previously *adjudicated* claims, see *Sanders* v. *United States*, 373 U. S. 1, 12 (1963). After this Court interpreted the law to permit dismissal of "abusive" claims—as distinguished from "successive" claims, see *ibid.*—Congress codified restrictions on both types of claims in §2244(b), but still without using the phrase "second or successive." See §2244(b) (1964 ed., Supp. IV) (providing rules governing applications filed by state as well as federal prisoners). It was not until 1996 that AEDPA incorporated the phrase "second or successive" into §2244(b). In light of this complex history of the phrase "second or successive," we must rely upon

the current text to determine when the phrase applies, rather than pre-AEDPA precedents or superseded statutory formulations.[12]

## C

Nor do our *post*-AEDPA cases contradict our approach. Only one, *Burton* v. *Stewart*, 549 U. S. 147 (2007) *(per curiam),* comes close to addressing the threshold question whether an application is "second or successive" if it challenges a new judgment. And that case confirms that the existence of a new judgment is dispositive. In *Burton,* the petitioner had been convicted and sentenced in state court in 1994. See *id.*, at 149. He successfully moved for resentencing based on vacatur of an unrelated prior conviction. *Id.*, at 150. The state appellate court affirmed the conviction but remanded for a second resentencing. *Ibid.* In March 1998, the trial court entered an amended judgment and new sentence. *Id.*, at 151. In December 1998, with state review of his new sentence still pending, the petitioner filed a §2254 application challenging his 1994 conviction. The District Court denied it on the merits, the Court of Appeals affirmed, and we denied certiorari. *Ibid.*

In 2002, after exhausting his state sentencing appeal, the petitioner filed a §2254 petition challenging only his 1998 sentence. The District Court denied relief on the merits and the Court of Appeals affirmed. We reversed, holding that the petition challenging the sentence should have been dismissed as an unauthorized "second or successive" application. *Id.*, at 153; see §2244(b)(3)(A). We

---

[12] The dissent speculates about issues far beyond the question before the Court. See, *e.g.*, *post*, at 8–9 (suggesting that our judgment-based reading of §2244(b) calls into question precedents recognizing habeas petitions challenging the denial of good-time credits or parole). We address only an application challenging a new state-court judgment for the first time. We do not purport to constrain the scope of §2254 as we have previously defined it.

rejected the petitioner's argument "that his 1998 and 2002 petitions challenged different judgments." *Id.,* at 155; see *id.*, at 156–157. Although petitioner had styled his first petition as a challenge to the 1994 conviction and his second petition as a challenge to the 1998 sentence, we concluded that both attacked the same "judgment" because the 1998 sentence was already in place when the petitioner filed his first application for federal habeas relief. See *id.*, at 156. In other words, the judgment he challenged in his 1998 application was "the *same one* challenged in the subsequent 2002 petition"; it "was the judgment pursuant to which [the petitioner] was being detained." *Ibid.* (emphasis added). We expressly recognized that the case might have been different had there been a "new judgment intervening between the two habeas petitions." *Ibid.* There was no such judgment in *Burton*, but there is such an intervening judgment here.

This is Magwood's *first* application challenging that intervening judgment. The errors he alleges are *new*. It is obvious to us—and the State does not dispute—that his claim of ineffective assistance at resentencing turns upon new errors. But, according to the State, his fair-warning claim does not, because the state court made the same mistake before. We disagree. An error made a second time is still a new error. That is especially clear here, where the state court conducted a full resentencing and reviewed the aggravating evidence afresh. See Sentencing Tr., R. Tab 1, at R–25 ("The Court in f[or]mulating the present judgment has *considered* the original record of the trial and sentence. . . . The present judgment and sentence has been the result of a *complete and new assessment* of all of the evidence, arguments of counsel, and law" (emphasis added)).[13]

—————

[13] Cf. *Walker* v. *Roth*, 133 F. 3d 454, 455 (CA7 1997) ("None of these new claims were raised in his first petition, nor could they have been;

## D

The dissent's concern that our rule will allow "petition-ers to bring abusive claims so long as they have won any victory pursuant to a prior federal habeas petition," *post,* at 14, is greatly exaggerated. A petitioner may not raise in federal court an error that he failed to raise properly in state court in a challenge to the judgment reflecting the error. If a petitioner does not satisfy the procedural re-quirements for bringing an error to the state court's atten-tion—whether in trial, appellate, or habeas proceedings, as state law may require—procedural default will bar federal review. See *Coleman* v. *Thompson*, 501 U. S. 722, 729–730 (1991); *O'Sullivan* v. *Boerckel*, 526 U. S. 838, 848 (1999) (stating that the petitioner's "failure to present three of his federal habeas claims to the [state court] in a timely fashion has resulted in a procedural default of those claims"). In this case, the State argued that Mag-wood procedurally defaulted his fair-warning claim by failing to raise it properly in his collateral challenge to the 1986 judgment, and sought dismissal on that ground. Only after ruling that Magwood did not procedurally default the claim did the District Court *sua sponte* con-sider whether §2244(b) barred review.[14] We leave that procedural-default ruling to the Court of Appeals to review in the first instance. Here, we underscore only that proce-dural-default rules continue to constrain review of claims in all applications, whether the applications are "second or

_____

[the petitioner] is attempting to challenge the constitutionality of a proceeding which obviously occurred after he filed, and obtained relief, in his first habeas petition").

[14] See 481 F. Supp. 2d 1262, 1267 (MD Ala. 2007) ("This court split the proceedings on the current petition into two stages: Stage I (deter-mining whether the claims were procedurally defaulted) and Stage II (considering the merits of the claims that were not procedurally de-faulted"). Few of Magwood's claims survived the initial cut.

successive" or not.[15]

Ironically, in an effort to effectuate what they believe is Congress' intent not to give any unfair benefit to habeas petitioners, the State and the dissent propose an alternative rule that would "close our doors to a class of habeas petitioners seeking review without any clear indication that such was Congress' intent." *Castro* v. *United States*, 540 U. S. 375, 381 (2003). Many examples can be given, but one suffices to illustrate this point. Suppose that a petitioner files an application raising 10 meritorious claims challenging his conviction. The district court grants a conditional writ based on one of them, without reaching the remaining nine. Upon retrial, the state court commits the same 10 legal mistakes. (These are new errors, but no more new than the sentencing error in Magwood's case.) Is an application presenting those same 10 claims—now based on the errors in the new judgment—"second or successive"? Under the opportunity-based rule advanced by the State and the dissent, the answer must be yes. All 10 claims would have to be dismissed. See §2244(b)(1) (requiring dismissal of any claim presented in a prior application). The State attempts to avoid this "procedural anomal[y]," *Castro, supra,* at 380, by suggesting that we treat the nine unadjudicated claims as part of a first application, because they were never adjudicated on the merits. Cf. *Slack,* 529 U. S., at 478–481; *Martinez-Villareal*, 523 U. S., at 643–645. As for the *adjudicated* claim, "[r]espondents assume that state judges will follow instructions imposed by federal courts," and if not, "that federal courts will consider a petitioner's claim that the state court violated due process by failing to

———————

[15] The dissent's concern that such a petitioner may "reraise every argument against a sentence that was rejected by the federal courts during the first round of federal habeas review," *post,* at 12, is similarly hyperbolic. It will not take a court long to dispose of such claims where the court has already analyzed the legal issues.

honor the federal court's mandate." Brief for Respondents 42. We see no need to engage in such novel and complex rationalizations. AEDPA's text commands a more straightforward rule: where, unlike in *Burton,* there is a "new judgment intervening between the two habeas petitions," 549 U. S., at 156, an application challenging the resulting new judgment is not "second or successive" at all.

V

The State objects that our reading of §2244(b) would allow a petitioner who obtains a conditional writ as to his sentence to file a subsequent application challenging not only his resulting, *new* sentence, but also his original, *undisturbed* conviction. The State believes this result follows because a sentence and conviction form a single "judgment" for purposes of habeas review. This case gives us no occasion to address that question, because Magwood has not attempted to challenge his underlying conviction.[16] We base our conclusion on the text, and that text is not altered by consequences the State speculates will follow in another case.[17]

\* \* \*

For these reasons, we conclude that Magwood's first application challenging his new sentence under the 1986 judgment is not "second or successive" under §2244(b).

—————

[16] Several Courts of Appeals have held that a petitioner who succeeds on a first habeas application and is resentenced may challenge only the "portion of a judgment that arose as a result of a previous successful action." *Lang* v. *United States,* 474 F. 3d 348, 351 (CA6 2007) (citing decisions); see also *Walker,* 133 F. 3d, at 455; *United States* v. *Esposito,* 135 F. 3d 111, 113–114 (CA2 1997).

[17] In any case, we cannot agree with the dissent that our reading of §2244(b) gives a windfall to "a defendant who succeeds on even the most minor and discrete issue." *Post,* at 12. AEDPA permits relief "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." §2254(a).

The Court of Appeals erred by reading §2244(b) to bar review of the fair-warning claim Magwood presented in that application. We do not address whether the fair-warning claim is procedurally defaulted. Nor do we address Magwood's contention that the Court of Appeals erred in rejecting his ineffective-assistance claim by not addressing whether his attorney should have objected under federal law.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 09–158

BILLY JOE MAGWOOD, PETITIONER *v.* TONY
PATTERSON, WARDEN, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[June 24, 2010]

JUSTICE BREYER, with whom JUSTICE STEVENS and
JUSTICE SOTOMAYOR join, concurring in part and concur-
ring in the judgment.

I join the Court's well-reasoned opinion with the excep-
tion of Part IV–B. The Court neither purports to alter nor
does alter our holding in *Panetti* v. *Quarterman*, 551 U. S.
930 (2007). See *ante,* at 14, n. 11. In *Panetti,* we "declined
to interpret 'second or successive' as referring to all §2254
applications filed second or successively in time, *even
when* the later filings address a state-court judgment
*already challenged in a prior §2254 application."* 551 U. S.
at 944 (emphasis added). In this case, by contrast, we
determine how 28 U. S. C. §2244(b) applies to a habeas
petition that is the *first* petition to address a *new* "state-
court judgment" that has not "already [been] challenged in
a prior §2254 application." And, for the reasons provided
by the Court, such a "first" petition is not "second or suc-
cessive." Of course, as the dissent correctly states, if
Magwood were challenging an undisturbed state-court
judgment for the second time, abuse-of-the-writ principles
would apply, including *Panetti*'s holding that an "applica-
tion" containing a "claim" that "the petitioner had no fair
opportunity to raise" in his first habeas petition is not a
"second or successive" application. *Post,* at 3 (opinion of
KENNEDY, J.). Contrary to the dissent's assertion, *post,* at
6–8, the Court's decision today and our decision in *Panetti*
fit comfortably together.

# SUPREME COURT OF THE UNITED STATES

_____

No. 09–158

_____

## BILLY JOE MAGWOOD, PETITIONER *v.* TONY PATTERSON, WARDEN, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[June 24, 2010]

JUSTICE KENNEDY, with whom THE CHIEF JUSTICE, JUSTICE GINSBURG, and JUSTICE ALITO join, dissenting.

The Court today decides that a state prisoner who succeeds in his first federal habeas petition on a discrete sentencing claim may later file a second petition raising numerous previously unraised claims, even if that petition is an abuse of the writ of habeas corpus. The Court, in my respectful submission, reaches this conclusion by misreading precedents on the meaning of the phrase "second or successive" in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The Court then rewrites AEDPA's text but refuses to grapple with the logical consequences of its own editorial judgment. A straightforward application of the principles articulated in *Panetti* v. *Quarterman*, 551 U. S. 930 (2007), consistent with the conclusions of all of the Courts of Appeals that have considered this issue, dictates the opposite result. The design and purpose of AEDPA is to avoid abuses of the writ of habeas corpus, in recognition of the potential for the writ's intrusive effect on state criminal justice systems. But today's opinion, with considerable irony, is not only a step back from AEDPA protection for States but also a step back even from abuse-of-the-writ principles that were in place before AEDPA. So this respectful dissent becomes necessary.

## I

Absent two exceptions that are inapplicable here, the relevant statutory provision in AEDPA provides:

> "A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed . . . ." 28 U. S. C. §2244(b)(2).

The question before the Court is whether petitioner Billy Joe Magwood filed "a second or successive" application by raising a claim in his second habeas petition that he had available and yet failed to raise in his first petition.

The term "second or successive" is a habeas "term of art." *Slack* v. *McDaniel*, 529 U. S. 473, 486 (2000). It incorporates the pre-AEDPA abuse-of-the-writ doctrine. *Panetti*, 551 U. S., at 947. Before today, that legal principle was established by the decisions of this Court. See, *e.g., ibid.; Slack*, 529 U. S., at 486. Under that rule, to determine whether an application is "second or successive," a court must look to the substance of the claim the application raises and decide whether the petitioner had a full and fair opportunity to raise the claim in the prior application. *Panetti*, 551 U. S., at 947. Applying this analytical framework puts applications into one of three categories.

First, if the petitioner had a full and fair opportunity to raise the claim in the prior application, a second-in-time application that seeks to raise the same claim is barred as "second or successive." This is consistent with pre-AEDPA cases applying the abuse-of-the-writ doctrine and the bar on "second or successive" applications. See, *e.g., Wong Doo* v. *United States*, 265 U. S. 239, 241 (1924) (second application barred where petitioner had a "full opportunity to offer proof" of the same claim in his first habeas application); *Woodard* v. *Hutchins*, 464 U. S. 377, 379 (1984) (Powell, J., concurring, writing for a majority of the Court)

(second application barred for claims that "could and should have been raised in [the] first petition"); *Delo* v. *Stokes*, 495 U. S. 320, 321 (1990) *(per curiam)* (subsequent application barred for a claim that "could have been raised in his first petition for federal habeas corpus"). As *McCleskey* v. *Zant*, 499 U. S. 467, 489 (1991), explained, "a petitioner can abuse the writ by raising a claim in a subsequent petition that he could have raised in his first, regardless of whether the failure to raise it earlier stemmed from a deliberate choice." See also Habeas Corpus Rule 2(c) (instructing habeas petitioners to "specify all the grounds for relief available to [them]" and to "state the facts supporting each ground"); *Schlup* v. *Delo,* 513 U. S. 298, 317–323 (1995) (describing adoption in habeas, through legislation and judicial decision, of modified res judicata (claim preclusion) doctrine); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §4406, p. 138 (2d ed. 2002) (claim preclusion aspect of res judicata doctrine bars "matters that [were not, but] ought to have been raised" in prior litigation).

Second, if the petitioner had no fair opportunity to raise the claim in the prior application, a subsequent application raising that claim is not "second or successive," and §2244(b)(2)'s bar does not apply. This can occur where the claim was not yet ripe at the time of the first petition, see, *e.g., Panetti, supra*, at 947, or where the alleged violation occurred only after the denial of the first petition, such as the State's failure to grant the prisoner parole as required by state law, see, *e.g., Hill* v. *Alaska*, 297 F. 3d 895, 898–899 (CA9 2002); *Crouch* v. *Norris*, 251 F. 3d 720, 723–725 (CA8 2001); *In re Cain*, 137 F. 3d 234, 236 (CA5 1998). And to respond to the Court's concern, see *ante*, at 20, if the applicant in his second petition raises a claim that he raised in his first petition but the District Court left unaddressed at its own discretion, the second application would not be "second or successive." Reraising a previously

unaddressed claim is not abusive by any definition.  If the
Court believes there are "[m]any examples" where abuse-
of-the-writ principles unfairly close the door to state pris-
oners seeking federal habeas review, *ibid.*, one would
think the Court would be able to come up with an exam-
ple.  It does not do so.

Third, a "mixed petition"—raising both abusive and
nonabusive claims—would be "second or successive."  In
that circumstance the petitioner would have to obtain
authorization from the court of appeals to proceed with the
nonabusive claims.  See §2244(b)(3); see also 28 J. Moore
et al., Federal Practice §671.10[2][b] (3d ed. 2010).  After
the court of appeals makes its determination, a district
court may consider nonabusive claims that the petitioner
had no fair opportunity to present in his first petition and
dismiss the abusive claims.  See §2244(b)(4).

The operation of the above rule is exemplified by the
Court's decision in *Panetti*.  Panetti's claim that he was
mentally incompetent to be executed under *Ford* v. *Wain-
wright*, 477 U. S. 399 (1986), did not become ripe until
after the denial of his first habeas petition.  When the
*Ford* claim became ripe, Panetti filed a second habeas
petition, raising his *Ford* claim for the first time.  In con-
cluding that this second habeas petition was not a "second
or successive" application, this Court explained that "sec-
ond or successive" did not "refe[r] to all §2254 applications
filed second or successively in time," but was rather a
term-of-art that "takes its full meaning from our case law,
including decisions predating the enactment of [AEDPA]."
551 U. S., at 943–944.  The Court relied on AEDPA's
purpose of "'further[ing] the principles of comity, finality,
and federalism,'" *id.,* at 945 (quoting *Miller-El* v. *Cockrell*,
537 U. S. 322, 337 (2003)), an aversion to the "empty
formality requiring prisoners to file unripe" claims, 551
U. S., at 946, and this Court's pre-AEDPA cases regarding
the abuse-of-the-writ doctrine, *id.,* at 947.  *Panetti* thus

looked to the nature of the claim raised in the second-in-time habeas petition to determine that the application was not "second or successive." *Ibid.*

The above principles apply to a situation, like the present one, where the petitioner in his first habeas proceeding succeeds in obtaining a conditional grant of relief, which allows the state court to correct an error that occurred at the original sentencing. Assume, as alleged here, that in correcting the error in a new sentencing proceeding, the state court duplicates a different mistake that also occurred at the first sentencing. The second application is "second or successive" with respect to that claim because the alleged error "could and should have" been raised in the first petition. *Woodard*, 464 U. S., at 379 (opinion of Powell, J.). Put another way, under abuse-of-the-writ principles, a petitioner loses his right to challenge the error by not raising a claim at the first opportunity after his claim becomes ripe. On the other hand, if the petitioner raises a claim in his second habeas petition that could not have been raised in the earlier petition— perhaps because the error occurred for the first time during resentencing—then the application raising the claim is not "second or successive" and §2244(b)(2)'s bar does not apply.

Although the above-cited authorities are adequate to show that the application in this case is "second or successive," it must be noted that no previous case from this Court has dealt with the precise sequence of events here: A petitioner attempts to bring a previously unraised claim after a second resentencing proceeding that followed a grant of federal habeas relief. The conclusion that such an application is barred as "second or successive" unless the claim was previously unavailable is consistent with the approach of every court of appeals that has considered the issue, although some of those cases highlight subtleties that are not relevant under abuse-of-the-writ principles.

See, *e.g., Pratt* v. *United States,* 129 F. 3d 54, 62–63 (CA1 1997); *Galtieri* v. *United States,* 128 F. 3d 33, 37–38 (CA2 1997); *United States* v. *Orozco-Ramirez,* 211 F. 3d 862, 871 (CA5 2000); *Lang* v. *United States,* 474 F. 3d 348, 351−353 (CA6 2007). While most of these cases arose in the context of federal prisoners' challenges to their convictions or sentences under 28 U. S. C. §2255, the "second or successive" bar under §2244(b) applies to §2255 motions. See §2255(h) (2006 ed., Supp. II).

In the present case the Court should conclude that Magwood has filed a "second or successive habeas corpus application." In 1983, he filed a first federal habeas petition raising nine claims, including that the trial court improperly failed to consider two mitigating factors when it imposed Magwood's death sentence. The District Court granted Magwood's petition and ordered relief only on the mitigating factor claim. The state trial court then held a new sentencing proceeding, in which it considered all of the mitigating factors and reimposed the death penalty. In 1997, Magwood brought a second habeas petition, this time raising an argument that could have been, but was not, raised in his first petition. The argument was that he was not eligible for the death penalty because he did not have fair notice that his crime rendered him death eligible. There is no reason that Magwood could not have raised the identical argument in his first habeas petition. Because Magwood had a full and fair opportunity to adjudicate his death-eligibility claim in his first petition in 1983, his 1997 petition raising this claim is barred as "second or successive."

## II

The Court reaches the opposite result by creating an ill-defined exception to the "second or successive" application bar. The Court, in my respectful view, makes two critical errors. First, it errs in rejecting *Panetti*'s claim-based

approach to determining whether an application is "second or successive." Second, it imposes an atextual exception to §2244(b)'s bar against "second or successive" applications, requiring that the second-in-time application be brought against the same judgment. This second error is underscored by the fact that the Court refuses to deal with the logical implications of its newly created rule.

## A

The Court concludes that because AEDPA refers to "second or successive" applications rather than "second or successive" claims, the nature of the claims raised in the second application is irrelevant. See *ante*, at 13 ("[A]lthough we agree with the State that many of the rules under §2244(b) focus on claims, that does not entitle us to rewrite the statute to make the phrase 'second or successive' modify claims as well"). This is incorrect. As explained above, *Panetti* establishes that deciding whether an application itself is "second or successive" requires looking to the nature of the claim that the application raises to determine whether the petitioner had a full and fair opportunity to raise that claim in his earlier petition. Indeed, the only way *Panetti* could have concluded that the application there was not "second or successive" was to look at the underlying claim the application raised. 551 U. S., at 947.

While the Court asserts it is not calling *Panetti* into doubt, see *ante*, at 14, n. 11, it does not even attempt to explain how its analysis is consistent with that opinion, cf. *Panetti*, 551 U. S., at 964 (THOMAS, J., dissenting) ("Before AEDPA's enactment, the phrase 'second or successive' meant the same thing it does today—any subsequent federal habeas application challenging a state-court judgment"). The best that can be said is the Court is limiting its new doctrine so it has no applicability to previously unexhausted *Ford* claims, confining the holding of *Panetti*

to the facts of that case. 551 U. S., at 968 (THOMAS, J., dissenting) ("Today's decision thus stands only for the proposition that *Ford* claims somehow deserve a special (and unjustified) exemption from the statute's plain import").

Failing to consider the nature of the claim when deciding whether an application is barred as "second or successive" raises other difficulties. Consider a second-in-time habeas petition challenging an alleged violation that occurred entirely after the denial of the first petition; for example, a failure to grant a prisoner parole at the time promised him by state law or the unlawful withdrawal of good-time credits. See *supra*, at 3. Under the Court's rule, it would appear that a habeas application challenging those alleged violations would be barred as "second or successive" because it would be a second-in-time application challenging custody pursuant to the same judgment. That result would be inconsistent with abuse-of-the-writ principles and might work a suspension of the writ of habeas corpus.

## B

Having unmoored the phrase "second or successive" from its textual and historical underpinnings, the Court creates a new puzzle for itself: If the nature of the claim is not what makes an application "second or successive," then to what should a court look? Finding no reference point in §2244(b)'s text, the Court searches in AEDPA for a different peg.

The Court believes that it finds its peg in a different provision:

> "[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

§2254(a).

But this provision does not purport to create any prerequisites to §2244(b)'s bar against "second or successive" applications. The accepted reading of the quoted language is that this is a mere "status requirement." See 1 R. Hertz & J. Liebman, Federal Habeas Corpus Practice and Procedure §8.1, p. 391 (5th ed. 2005). The provision stands for the simple proposition that a petitioner must be held "pursuant to the judgment of a State court" to be able to file any §2254(b) petition in the first place. That reading also explains why federal habeas petitions can attack not only the judgment pursuant to which the petitioner is being held but also "the duration of sentence . . . and . . . the conditions under which that sentence is being served," including rules such as "the basis of parole" and "good time" credits. *Id.,* §9.1, at 475–481.

The Court's reading of the phrase "pursuant to the judgment of a State court" as a limitation on §2244(b)(2)'s "second or successive" application bar is artificial. The Court would amend §2244(b)(2) to read: "A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application [*against the same judgment*] shall be dismissed." This is not what §2244(b)(2) says.

The Court wholly glosses over another significant problem with its atextual analysis. The Court relies upon the notion that "[a]n error made a second time is still a new error." *Ante*, at 18. But in making this statement, the Court can mean one of two very different things:

First, it could mean that any error logically encompassed in a reentered judgment is a "new" error. A criminal "judgment" generally includes both the conviction and the sentence. See, *e.g.,* Fed. Rule Crim. Proc. 32(k)(1) (a criminal judgment "must set forth the plea, the jury verdict or the court's findings, the adjudication, and the

sentence"); *Teague* v. *Lane*, 489 U. S. 288, 314, n. 2 (1989) ("As we have often stated, a criminal judgment necessarily includes the sentence imposed upon the defendant"). This well-established principle applies in the federal habeas context, where petitioner is "in custody pursuant to the judgment." §2254(b). A person cannot be held in custody "pursuant to" a sentence, but only pursuant to "the" (*e.g.,* one) judgment, which includes both the conviction and sentence. See *Burton* v. *Stewart*, 549 U. S. 147, 156–157 (2007) *(per curiam)* (explaining that AEDPA's statute of limitations did not run until the judgment—"both his conviction *and* sentence became final" (internal quotation marks omitted)).

Under this principle, the Court's holding today would allow a challenger in Magwood's position to raise any challenge to the guilt phase of the criminal judgment against him in his second application, since a "new" judgment—consisting of both the conviction and sentence—has now been reentered and all of the errors have (apparently) occurred anew. As an illustration, the state trial court here reentered the following judgment after resentencing: "IT IS, THEREFORE, ORDERED AND ADJUDGED BY THE COURT that Billy Joe Magwood is guilty of the offense of aggravated murder . . . and that Billy Joe Magwood is sentenced to death." App. to Pet. for Cert. 106a. This would mean that Magwood's attorney could dig through anything that occurred from *voir dire* to the cross-examination of witnesses to the jury's guilty verdict, and raise any alleged errors for the first time in his second habeas application, all because the trial court did not properly consider two mitigating factors during Magwood's first sentencing proceeding.

Second, and alternatively, the Court could retreat even further from the statutory text and conclude that only some parts of the reentered judgment are open to challenge by way of a second habeas application. Magwood,

for example, argues that he can only challenge previously unraised errors made during sentencing. Brief for Petitioner 21, n. 8. Indeed, Magwood goes further and suggests that even the sentencing would not be reopened in a case where a court's order leads the trial court to revise only the defendant's term of supervised release. *Id.,* at 28, n. 11. If the Court is adopting this some-parts-of-the-criminal-judgment exception to the "second or successive" application bar, it is unclear why the error that Magwood now raises is a "new error" at all. After all, Magwood did not challenge his death eligibility in his first habeas petition but only disputed that he should not get the death penalty, as a matter of discretion, if the trial court properly weighed all of the aggravating and mitigating factors. The state trial court conducted this reweighing and had no reason to reconsider the uncontested finding that Magwood is death eligible. It is hard to see how the trial court's failure to reconsider *sua sponte* its previous death-eligibility finding is a "new error," any more than its failure to reconsider the various errors that may have taken place at the guilt phase would have been new errors.

The Court contends the approach dictated by *Panetti* "considerably undermine[s]—if not render[s] superfluous," *ante,* at 14, the exceptions in §2244(b)(2), which allow a petitioner to bring a claim in a "second or successive" application based on certain factual discoveries or based on a new Supreme Court precedent that has been applied retroactively. The Court seems to be saying that applying *Panetti*'s rule would make the exceptions superfluous, because any claim that would satisfy the exceptions would necessarily satisfy the more general rule derived from the abuse-of-the-writ doctrine. But the Court misconceives the scope of the rule that an application is only "second or successive" if it raises for the first time a claim that could have been raised before. A second petition raising a claim that could have been raised in a prior petition, even

though strengthened by a new decision from this Court or based upon newly discovered evidence, is still "second or successive." Thus this subsequent application would only be permitted if it qualified under the pertinent subsection (b)(2) exception. In fact, it is the Court's approach that limits the relevance of the subsection (b)(2) exceptions. Under the Court's theory, the "second or successive" bar does not apply at all to applications filed by petitioners in Magwood's situation, and thus the subsection (b)(2) exceptions would have no operation in that context.

## III

The Court's approach disregards AEDPA's "'principles of comity, finality, and federalism.'" *Panetti,* 551 U. S., at 945 (quoting *Miller-El*, 537 U. S., at 337). Under the Court's newly created exception to the "second or successive" application bar, a defendant who succeeds on even the most minor and discrete issue relating to his sentencing would be able to raise 25 or 50 new sentencing claims in his second habeas petition, all based on arguments he failed to raise in his first petition. "[I]f reexamination of [a] convictio[n] in the first round of habeas offends federalism and comity, the offense increases when a State must defend its conviction in a second or subsequent habeas proceeding on grounds not even raised in the first petition." *McCleskey*, 499 U. S., at 492.

The Court's novel exception would also allow the once-successful petitioner to reraise every argument against a sentence that was rejected by the federal courts during the first round of federal habeas review. As respondents explain, under the Court's theory, "a post-resentencing petitioner could simply staple a new cover page with the words, '§2254 Petition Attacking New Judgment,' to his previously adjudicated petition." Brief for Respondents 47. Because traditional res judicata principles do not apply to federal habeas proceedings, see *Salinger* v. *Loisel*,

265 U. S. 224, 230 (1924), this would force federal courts to address twice (or thrice, or more) the same claims of error. The State and the victims would have to bear anew the "significant costs of federal habeas corpus review," *McCleskey*, *supra*, at 490–491, all because the petitioner previously succeeded on a wholly different, discrete, and possibly unrelated claim.

The Court's suggestion that "[i]t will not take a court long to dispose of such claims where the court has already analyzed the legal issues," *ante*, at 20, n. 15, misses the point. This reassurance will be cold comfort to overworked state district attorneys, who will now have to waste time and resources writing briefs analyzing dozens of claims that should be barred by abuse-of-the-writ principles. It is difficult to motivate even the most dedicated professionals to do their best work, day after day, when they have to deal with the dispiriting task of responding to previously rejected or otherwise abusive claims. But that is exactly what the Court is mandating, under a statute that was designed to require just the opposite result. If the analysis in this dissent is sound it is to be hoped that the States will document the ill effects of the Court's opinion so that its costs and deficiencies are better understood if this issue, or a related one, can again come before the Court.

The Court's new exception will apply not only to death penalty cases like the present one, where the newly raised claim appears arguably meritorious. It will apply to all federal habeas petitions following a prior successful petition, most of which will not be in death cases and where the abusive claims the Court now permits will wholly lack merit. And, in this vein, it is striking that the Court's decision means that States subject to federal habeas review henceforth receive less recognition of a finality interest than the Federal Government does on direct review of federal criminal convictions. See *United States* v. *Parker*, 101 F. 3d 527, 528 (CA7 1996) (Posner, C. J.) ("A party

cannot use the accident of a remand to raise in a second
appeal an issue that he could just as well have raised in
the first appeal because the remand did not affect it").

The Court's approach also turns AEDPA's bar against
"second or successive" applications into a one-way ratchet
that favors habeas petitioners. Unless today's decision is
read to unduly limit *Panetti*, see *supra*, at 7–8, AEDPA
still incorporates recognized exceptions to the abuse-of-
the-writ doctrine to allow petitioners to bring their previ-
ously unavailable and unripe claims, see *ante*, at 1
(BREYER, J., concurring in part and concurring in judg-
ment). But after today's holding, AEDPA now "modi-
fie[s]," *ante*, at 15, abuse-of-the-writ principles and allows
petitioners to bring abusive claims so long as they have
won any victory pursuant to a prior federal habeas peti-
tion. The Court thus reads AEDPA as creating a new
loophole that habeas petitioners can exploit to challenge
their sentences based on grounds they previously ne-
glected to raise. This is inconsistent with the understand-
ing that AEDPA adds "new restrictions on successive
petitions" and "further restricts the availability of relief to
habeas petitioners." *Felker* v. *Turpin*, 518 U. S. 651, 664
(1996).

\*     \*     \*

Had Magwood been unsuccessful in his first petition, all
agree that claims then available, but not raised, would be
barred. But because he prevailed in his attack on one part
of his sentencing proceeding the first time around, the
Court rules that he is free, postsentencing, to pursue
claims on federal habeas review that might have been
raised earlier. The Court is mistaken in concluding that
Congress, in enacting a statute aimed at placing new
restrictions on successive petitions, would have intended
this irrational result.

Magwood had every chance to raise his death-eligibility

KENNEDY, J., dissenting

claim in his first habeas petition. He has abused the writ by raising this claim for the first time in his second petition. His application is therefore "second or successive." I would affirm the judgment of the Court of Appeals.